UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANTONIO MURO,** | Case No.: 22cv550-LL-LR |
| Petitioner, | |
| | **REPORT AND** |
| v. | **RECOMMENDATION FOR** |
| | **ORDER DENYING FIRST** |
| **CONNIE GIPSON, Warden et al.,** | **AMENDED PETITION FOR WRIT** |
| | **OF HABEAS CORPUS** |
| Respondents. | |
| | **[ECF No. 1]** |

This Report and Recommendation is submitted to the Honorable Linda Lopez, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. On April 20, 2022, Antonio Muro ("Petitioner"), a state prisoner proceeding pro se, commenced these habeas corpus proceedings pursuant to 28 U.S.C. § 2254 by filing his First Amended Petition for Writ of Habeas Corpus ("Petition."). (ECF No. 1.) Respondent filed an Answer to Petitioner's Petition on December 22, 2022, and Petitioner filed a Traverse on April 30, 2023. (See ECF No. 21; ECF No. 27.)

This Court has considered the Petition, Answer, Traverse, and all supporting documents filed by the parties. For the reasons set forth below, this Court

**RECOMMENDS** that Petitioner's First Amended Petition for Writ of Habeas Corpus be **DENIED**.

## I. FACTUAL BACKGROUND

The following facts are taken from the California Court of Appeal's opinion in People v. Muro, Appeal No. DO76118. (See ECF No. 22-5.) This Court presumes the state court's factual determinations to be correct, absent clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

> At approximately 2:00 p.m. on July 28, 2018, Muro walked up to 25-year-old David Twofeathers Durbin, who was standing in front of a 7-Eleven store in El Cajon, looking down at his cell phone. Muro raised a knife and stabbed Durbin in the chest, penetrating his heart and killing him. Muro said, "Remember this, [expletive], remember this,"
>
> Muro and Durbin had encountered one another only once before, a few days earlier, when Muro was spending time with J.C., Durbin's long-time girlfriend.[1] Durbin and J.C. were homeless, and Durbin was living in a drainage canal near a commercial area in El Cajon. Both were addicted to heroin. Muro regularly used marijuana and methamphetamine, and he lived either at a friend's house, someone else's trailer, or in his car. Approximately a week before the stabbing, J.C. and Muro had spent the evening together., using drugs. J.C. told Muro that Durbin had, in the past, inflicted domestic violence on her and, according to Muro, described Durbin as her ex-boyfriend.
>
> At the end of their evening together, Muro drove J.C. to the neighborhood near the drainage canal. J.C. saw Durbin walking with what she believed was the duffel bag in which she kept her clothing. J.C. got out of Muro's car and approached Durbin. J.C. grabbed onto her bag and asked Durbin to hand it over. According to J.C., Durbin said, "Let go of the bag, or else I am going to sock you." Seeing the interaction between J.C. and Durbin, Muro got out of his car, approached Durbin, and punched him in the face three times. Durbin made a comment about having eaten the punches, meaning that they didn't faze him, and walked away toward the drainage canal with J.C.'s bag.

---

[1] We refer to witnesses by their initials to protect their privacy.

Once in the drainage canal, Durbin told two friends about the incident, and all three of them went back to the area where it occurred. Muro and J.C. also returned to the area because, according to Muro, J.C. insisted on trying to retrieve her bag. As some point, J.C. got out of Muro's car. Then, an altercation between Muro and Durbin took place, in which Muro drove his car toward Durbin a few times, and Durbin threw wrenches and a heavy bolt cutter tool toward Muro's car. During the incident, Durbin yelled at Muro to get out of the car. According to Muro, Durbin said, "What's up now, [expletive], you don't know who you're messing with." By the end of the incident, Muro's front windshield and one rear window had been shattered. Eventually, Muro drove away without J.C. According to Muro, for the next few days he was afraid that Durbin or his friends would find and attack him.

Muro and J.C. met two or three days later and spent time together. J.C. stayed overnight with Muro. Muro and J.C. talked about the earlier incident between Muro and Durbin. According to J.C., she told Muro that Durbin had returned her bag, that Muro had been out of line toward Durbin, and that Muro should leave Durbin alone. Muro felt like J.C. was taking Durbin's side regarding the incident. J.C. testified that during the conversation Muro told her that Durbin "was lucky that he punched him because [Muro] normally stabs people." After spending time with J.C. the second time, Muro eventually dropped her off in the area near the drainage canal.

One of Muro's friends, C.R., works at a laundromat near the drainage canal and knows Durbin and J.C. According to Muro's testimony, C.R. told him one or two days before the stabbing that he had heard about the incident between Durbin and Muro from several people. As Muro recounted what C.R. told him, Durbin was asking about Muro's whereabouts, and Durbin or someone else stated that if Muro is seen in the area, he had better watch his back. C.R.'s statements caused Muro to worry about being attacked.

According to certain evidence at trial, Muro came to C.R.'s house on the morning of the stabbing and asked C.R. to accompany him to "get" Durbin, which C.R. interpreted as referring to a fistfight.[2] C.R. declined to do so and told Muro that J.C. "wasn't worth it." Muro denied he ever asked C.R. to help him "get" Durbin.

At trial, Muro testified that on the day of the stabbing, he went to a neighborhood in El Cajon, not far from the drainage canal, to spend some time at C.R.'s house. Instead, Muro encountered a different friend,

---

[2] C.R. told a detective that the conversation with Muro took place on the morning of the stabbing. During his trial testimony, C.R. was less clear about the timing of the conversation.

identified only as "Perro," who also lives in the area. According to Muro, he smoked marijuana with Perro. Then, with Perro driving Muro's car, they went to eat at a taco shop that is very close to the drainage canal. While approaching the taco shop, Muro saw Durbin walking down the street, and Muro decided to confront Durbin to try to get Durbin to leave him alone. Video from security cameras captured the rest of the incident.

Perro parked the car, and Muro got out and walked toward Durbin, who had stopped near a sidewalk in front of a 7-Eleven store with a friend standing near him. According to Durbin's friend, he and Durbin were walking to the 7-Eleven to get drinks and snacks. Durbin was looking down at his cell phone and did not see Muro approach. Without saying anything, Muro raised a knife and plunged it into the left side of Durbin's chest. Durbin's friend, who was also looking at his phone, heard a thud, looked up, and saw a six-inch long hunting knife being pulled out of Durbin's chest. Muro stepped back and stated, "Remember this, [expletive], remember this," while looking at Durbin. Muro then walked away, got into the car with Perro, and left.

Paramedics arrived and transported Durbin to the hospital, where he was pronounced dead less than an hour after the stabbing. An autopsy revealed a stab wound to Durbin's left chest that was four to five inches long and went through Durbin's heart and into his lung. . . .

At trial, Muro testified and admitted to stabbing Durbin. According to Muro, he was not looking for Durbin on the day of the stabbing, but only happened to see him on the way to the taco shop and decided to confront Durbin because he wanted to do something about his fear of being attacked. Muro testified that when he got out of the car, he was thinking that he was "probably going to go punch this guy." As Muro explained his state of mind, "I want to go confront him about being all up in my business and making me feel like I'm going to get—I wanted it to stop. I'm terrorized. I'm scared. I'm afraid. I'm shocked that—of what he did, and it's still kind of fresh in my mind. It's been on my mind. I haven't been able to sleep, and it's really a situation that I wanted to stop because it's really, really troublesome to me. And I'm—I want to pretty much, like, defend myself in a way where—where you're not going to be stepping all over me, and you're not going to keep traumatizing me and leaving this impression on my mind that you're going to get me." Muro felt it was necessary to confront Durbin because "he was going to do . . . some kind of violence towards me." As Muro explained, "I decided to go put an end to this—this feeling that I had. I didn't want to feel terrified anymore. I wanted to defend myself."

Muro testified that while he was walking toward Durbin, he started to get scared and panicked about whether Durbin had a weapon. Therefore,

according to Muro, he wanted to have something to protect himself, and as he got near Durbin he took out a pocket knife that he always carries with him.[3]  As Muro testified, "I started having the thought in my head, like, 'well, what if he has something on him?' And now I'm starting to get more scared and more panicked about the situation as I'm heading towards him, and I'm pretty fearful.  So at that moment, I think I started to feel and see if I had something to—to protect myself with in case—in case he had something or anything of that sort."  Muro explained that although he understood he was not in actual immediate danger from Durbin, "in my mind, the second this guy looks at me and gets a chance, I'm going to get it."

According to Muro, he then took a wild swing at Durbin with the knife, not aiming at anything.  Muro explained, "As I'm walking towards him, then I'm getting scared, like, man, I don't know, just randomly.  I wasn't aiming at anything.  I was just swinging it at him."  Muro felt a connection with Durbin's body and then pulled out the knife.  He did not think that he had killed Durbin and did not want Durbin dead.  Moreover, Muro claimed that although he was not aiming for Durbin's chest, he also did not understand that someone could die from getting stabbed in the chest.

(ECF No. 22-5 at 3–8 (footnotes in the original[4]).)

## II.    PROCEDURAL BACKGROUND

### A.    Petitioner's Criminal Conviction and Direct Appeal

On May 20, 2019 a Jury convicted Petitioner of murder in the first degree pursuant to California Penal Code section 187(a).  (See ECF No. 22-2 at 748.)  The jury further found that Petitioner "personally use[d] a deadly or dangerous weapon, specifically a knife" in committing this murder, meriting enhancement under California Penal Code section 12022(b).  (See id. at 748–49.)  During his trial, Petitioner admitted to two prior felony convictions each meriting a one-year enhancement to his eventual sentence.  (Id. at 742–45.)  On June 21, 2019, Petitioner was sentenced to 26 years to life in state prison.  (Id. at 1015.)

---

[3] The prosecutor argued at trial that the security video from the incident shows Muro walking up to Durbin with a knife at the ready long before he reached Durbin.  Defense counsel argued that in viewing the security camera video, it is not clear when Muro took out the knife, and he pointed out that Muro claimed he took out the knife only shortly before reaching Durbin.

[4] The Court changed the numbering of the quoted footnotes to maintain consecutive footnote numbering in this Report and Recommendation.

On June 28, 2019, Petitioner filed a notice of appeal in the California Court of Appeal, arguing that his trial counsel was ineffective for failing to request a jury instruction on subjective provocation, which may have reduced the murder conviction from first to second degree.  (See ECF No. 22-1 at 145.)  Additionally, Petitioner argued that the trial court erred in applying Petitioner's two prison-prior sentencing enhancements due to a change in law.  (Id.)

On October 22, 2020, the California Court of Appeal found Petitioner had failed to establish prejudice resulting from any deficiencies in Petitioner's representation but determined that the sentencing enhancements imposed due to Petitioner's prior felonies were invalid.  (See ECF No. 22-5 at 16–19.)  Because the trial court had already stayed these sentencing enhancements, the California Court of Appeals did not remand for full resentencing.  (Id. at 19–20.)

On November 24, 2020, Petitioner filed a petition for review in the California Supreme Court.  (See ECF No. 22-6.)  On December 20, 2020, the California Supreme Court summarily denied the petition.  (See ECF No. 22-7.)

**B.    Petitioner's State Habeas Petition**

On March 21, 2022, Petitioner filed a state habeas petition directly with the California Supreme Court, where Petitioner argued that the trial court violated Petitioner's Eighth Amendment due process rights by finalizing jury instructions with counsel outside of the presence of Petitioner and the court reporter.  (See ECF No. 11-1.) On July 20, 2022, the California Supreme Court summarily denied the petition.  (See ECF No. 11-2.)

**C.    Petitioner's Federal Habeas Petition**

On April 20, 2022, Petitioner's federal Petition was filed in the United States District Court for the Southern District of California.  (See ECF No. 1.)  Petitioner asserts the following claims: (1) ineffective assistance of counsel due to counsel's failure to argue for jury instruction on provocation, and (2) his due process rights were violated when the court and counsel finalized jury instructions in Petitioner's absence.  (See id.)

Petitioner makes additional claims of "instructional error," "prejudicial error," and "cumulative error" arising from trial counsel's failure to request instruction on provocation in his Traverse.  (See ECF No. 27.)

### III. SCOPE OF REVIEW

Petitioner's claims are governed by the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 326 (1997).  Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Early v. Packer, 537 U.S. 3, 7–8 (2002); Harrington v. Richter, 562 U.S. 86, 100 ("[28 U.S.C.] § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

A state court's decision is "contrary to" clearly established federal law if the state court (1) "applies a rule different from the governing law set forth in [U.S. Supreme Court] cases," or (2) "decides a case differently than [the U.S. Supreme Court has] done on a set of materially indistinguishable facts."  See 28 U.S.C. § 2254(d)(1); Bell v. Cone, 535 U.S. 685, 694 (2002); Williams v. Taylor, 529 U.S. 362, 405–06 (2000).  An "unreasonable application" of clearly established federal law occurs where the state court "identifies the correct governing legal principle from [the U.S. Supreme Court's decisions] but unreasonably applies that principle to the facts of the prisoner's case."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413).  "[A]

federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable." Id. at 75–76 (citations and internal quotation marks omitted).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.

## IV. DISCUSSION

Respondent moves to dismiss the Petition with prejudice, claiming that Petitioner is unable to show that he received ineffective assistance of counsel or that the California Supreme Court's rejection of his due process claim was contrary to, or based on an unreasonable interpretation of clearly established U.S. Supreme Court caselaw.  (ECF No. 21 at 3.)

Petitioner asserts in his Traverse that his claims are meritorious on both counts and asks the Court to deny respondent's motion and grant his Petition.  (See ECF No. 1; ECF No. 27 at 2–3, 6.)  Respondent concedes that Petition is timely.  (ECF No. 21 at 2.) Petitioner has exhausted all state remedies for the claims of ineffective assistance of counsel and due process violation based on exclusion from a necessary stage of the trial. (See ECF No. 11-2; ECF No. 22-7.)

**A.**    **Ineffective Assistance of Counsel**

Petitioner asserts that he received constitutionally ineffective assistance of counsel at trial, in violation of his Sixth Amendment right.  (See ECF No. 1 at 6.)  Specifically, Petitioner contends that trial counsel's failure to raise CALCRIM 522, instructing the jury that the presence of subjective provocation may reduce murder from first to second degree, was constitutionally deficient.  (See ECF No. 1-2 at 2.)  Respondent argues that the state court's analysis correctly applied the relevant federal law in determining that any errors made by Petitioner's trial counsel were non-prejudicial.

In determining whether Petitioner's rights were violated, a reviewing federal court must first identify the appropriate state court decision to review.  Where there is no reasoned decision from the state's highest court, the reviewing federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 584 U.S. 1188, 1192 (2018); see also Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991) (providing that a reviewing federal court may "look through" to the last reasoned state court decision)

The California Supreme Court summarily denied Petitioner's petition (See ECF No. 22-6), and this Court must therefore "look through" the silent denial to the California Court of Appeal's opinion.  (See ECF No. 22-5.)  See Wilson, 584 U.S. at 1192; Ylst, 501 U.S. at 803–04.  The state appellate court, applying Strickland v Washington, found that Petitioner had failed to establish the prejudice necessary to demonstrate ineffective assistance of counsel.  (See ECF No. 22-5 at 15–19.)  The California Court of Appeal initially summarized the relevant factual and procedural background, and the applicable legal principles under both as follows:

> A criminal defendant is constitutionally entitled to effective assistance of counsel.  (U.S. Const., 6th Amend.; Cal. Const., art 1, § 15; Strickland v. Washington (1984) 466 U.S. 668, 684–85 (Strickland); People v. Frye (1998) 18 Cal.4th 894, 979.)  To establish ineffective assistance "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms.  Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different."  (People v. Mai (2013) 57 Cal.4th 986, 1009 (Mai).)  An ineffective assistance of counsel claim fails if the defendant makes an insufficient showing on either one of these components.  (Strickland, at p. 687.)
>
> "It is defendant's burden to demonstrate the inadequacy of trial counsel."  (People v. Lucas (1995) 12 Cal.4th 415, 436.)  "It is particularly difficult to prevail on an *appellate* claim of ineffective assistance.  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for

the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (Mai, supra, 57 Cal.4th at p. 1009.)

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of a lack of sufficient prejudice . . . that course should be followed." (Strickland, supra, 466 U.S. at p. 697.)

(Id. at 12–13.) The California Court of Appeal then acknowledged and summarized Petitioner's arguments as to why trial counsel's performance fell below applicable standards, though it declined to address these arguments on the merits. (Id. at 13–15.) Instead, the appellate court provided the following analysis on whether any errors were prejudicial, concluding that they were not:

In establishing ineffective assistance of counsel, "[a] defendant must prove prejudice that is a '"demonstrable reality' not simply speculation." . . . Prejudice requires "a reasonable probability that a more favorable outcome would have resulted . . ., i.e., a probability sufficient to undermine confidence in the outcome." (People v. Fairbank (1997) 16 Cal.4th 1223, 1241, citations omitted.) Therefore, our inquiry is whether it is reasonably probable that the jury would have convicted Muro of second degree murder, rather than first degree murder if it had been instructed with CALCRIM No. 522.

Muro argues that if CALCRIM No. 522 had been given, there is a reasonable probability the jury would have convicted Muro of second degree murder because according to Muro's testimony, "he acted while under the stress of intense emotion (fear and paranoia) that obscured his reasoning and judgment. And the facts elicited at trial showed Muro used drugs on the morning of the stabbing and in the days before and after the car incident. [¶] . . . [H]is substance abuse helped explain why he subjectively and unreasonably feared Durbin." However, as we will explain, based on Muro's own testimony describing the stabbing and his state of mind when it occurred, even if Muro acted out of fear and paranoia, there is no evidence that Durbin said or did anything that could be described as *provocation*.

As case law establishes, the term "provocation" in CALCRIM No. 522, has its ordinary, nontechnical meaning. (People v. Cole (2004) 33 Cal.4th 1158, 1217–1218 ["Provocation and heat of passion as used in the

instructions here bore their common meaning, which required no further explanation in the absence of a specific request."]".) "Provocation means 'something that provokes, arouses, or stimulates'; provoke means 'to arouse to a feeling or action[;]' . . . 'to incite to anger.' (Webster's Collegiate Dict. (10th ed. 2002) p. 938[.)]" (Hernandez, supra, 183 Cal.App.4th at p. 1334.) "'The evidentiary premise of a provocation defense is the defendant's emotional reaction *to the conduct of another*, which emotion may negate a requisite state.'" (People v. Nelson (2016) 1 Cal.5th 513, 541, italics added.) "[P]rovocation (the arousal of emotions) can give rise to a rash, impulsive decision, and this in turn shows no premeditation and deliberation." (Hernandez, at p. 1334.)

In explaining the manner in which provocation can reduce first degree murder to second degree murder, our Supreme Court has emphasized that the provocation must occur under circumstances in which it negates the possibility that the defendant planned the killing *in advance*. "[W]here the evidence of provocation would justify a jury determination that the accused had formed the intent to kill *as a direct response to the provocation and had acted immediately*, the trial court is required to give instructions on second degree murder under this theory. The fact that heated words were exchanged or a physical struggle took place between the victim and the accused before the fatality may be sufficient to raise a reasonable doubt in the minds of the jurors regarding whether the accused planned the killing *in advance*." (People v. Wickersham (1982) 32 Cal.3d 307, 329, italics added (Wickersham); see also People v. Fenenbock (1996) 46 Cal.App.4th 1688, 1705 ["The Wickersham court explained that the evidence of provocation must 'justify a jury determination that the accused had formed the intent to kill as a *direct* response to the provocation and had acted *immediately* . . . .'"].)

During his testimony, Muro extensively described his state of mind during the stabbing. However, Muro said nothing about any statement or conduct by Durbin that might have provoked him, without premeditation and deliberation, to rashly and impulsively decide to stab Durbin. Instead, it is undisputed that at the time of the stabbing Durbin was not aware of Muro's *own internal thought process*, he decided to commit a stabbing instead. Specifically, Muro explained that it occurred to him that Durbin might have a weapon, and he therefore wanted to arm himself. He therefore took out his knife and used it to stab Durbin.

Because there was absolutely no interaction between Durbin and Muro in the moments leading up to the stabbing, and because Muro admitted that his decision to commit a stabbing evolved solely from his own internal thought process, there was no evidentiary basis for the jury to find that

Durbin engaged in any provocative conduct that caused Muro to "act[] immediately" in "direct response" to that conduct by rashly and impulsively forming the intent to kill Durbin. (Wickersham, supra, 32 Cal.3d at p. 329.) The evidence presented at trial simply did not permit the jury to find that Muro was *provoked*, in that he had an "emotional reaction to the conduct of another" that negated premeditation and deliberation. (Nelson, supra, 1 Cal 5th at p. 541.)

Muro contends that, if instructed with CALCRIM No. 522, the jury could have found that Muro was provoked because he stabbed Durbin out of the "intense emotion" of "fear and paranoia." Muro argues he was still fearful of Durbin because of the violent incident between the two men that occurred approximately a week earlier, and because that irrational fear and paranoia was amplified by Muro's drug use. However, the ordinary meanings of the terms "provoke," and "provocation" do not, in normal speech, apply to a situation in which someone attacks an unwitting victim because he is afraid and paranoid that the victim might come looking for him based on an incident that happened a week earlier. When a defendant acts out of fear and paranoia by making a preemptive strike toward someone who does not even know the defendant is present, the defendant may reasonably be described as acting based on the intense emotion of fear and paranoia, but the defendant may not reasonably be described as having "acted immediately" in "direct response" to any provocation. (Wickersham, supra, 32 Cal.3d at p. 329.)

In sum, because there was no evidence at trial that Durbin did anything that might have provoked Muro to act rashly, impulsively, and without premeditation or deliberation, we conclude that even had the jury been instructed with CALCRIM No. 522, there is no reasonable probability that the jury would have convicted Muro of second degree murder rather than first degree murder.

(Id. at 16–19.)

Petitioner asserts that the state appellate court erred in denying his direct appeal but does not specify whether this alleged error arises from an application "contrary to" U.S. Supreme Court precedent or whether it was an "unreasonable application" of such precedent. (See ECF No. 27 at 4–5.)

To prevail on a claim of ineffective assistance of counsel in a federal habeas suit, Petitioner must establish that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. 668, 687 (1984). The

California Court of Appeal explicitly declined to address the alleged deficiencies of Petitioner's trial counsel, instead basing its determination on the dispositive issue of prejudice.  (ECF No. 22-5 at 15.)  To establish that counsel's performance prejudiced the defense, Petitioner must show that "the decision reached would reasonably likely have been different absent the errors."  Strickland, 466 U.S. at 696.  The California court's use of discretion to dispose of the case based on an analysis of prejudice alone is explicitly permitted by Strickland, which has been cited as clearly established law.  466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."); see also Hill v. Lockhart, 474 U.S. 52, 60 ("We find it unnecessary to determine whether there may be circumstances where advice by counsel . . . may be deemed constitutionally ineffective, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the Strickland v. Washington requirement of "prejudice.""); Cullen v. Pinholster, 563 U.S. 170, 189 ("[t]here is no dispute that the clearly established federal law [in the context of an ineffective assistance of counsel claim within a federal habeas petition] is Strickland v. Washington.").  Petitioner's sole reference to prejudice is a statement that "a determination whether he was prejudiced under the second prong of the Strickland test needs to be made."  (ECF No. 27 at 6.)  This ignores that the state court engaged in an analysis of prejudice and made such a determination.  (See ECF No. 22-5 at 15–19.) Petitioner fails to acknowledge the determination itself, much less advance any argument that the analysis performed lacked justification or a legal basis, as would be required for the Court to grant his habeas petition.

Even had Petitioner addressed the California courts' analysis, he would be unable to demonstrate that this analysis was contrary to clearly established federal law.  On a habeas appeal, as in other federal actions, the "only power [of federal courts] over state judgments is to correct them to the extent that they incorrectly adjudge federal rights."

<u>Herb v. Pitcairn</u>, 324 U.S. 117, 125 (1945).  Petitioner must demonstrate not that state law was applied incorrectly, but that the state court's application of relevant law violated a clearly established federal right.  <u>See</u> <u>Lockyer</u>, 538 U.S. at 75 (quoting <u>Williams</u>, 529 U.S. at 413).

As referenced above, <u>Strickland</u> remains the relevant standard for an ineffective assistance of counsel claim.  <u>Cullen</u> 563 U.S. at 189.  In reaching its decision, the state appellate court clearly and correctly identifies <u>Strickland v. Washington</u> as the appropriate federal standard.  (<u>See</u> ECF No. 22-5 at 12–13.)  The California Court of Appeal then cited several state court precedents in formulating its decision.  (<u>See</u> <u>id</u>.)  Federal courts have repeatedly upheld the state law precedents cited by the California Court of Appeal in this case as consistent with <u>Strickland</u>.  <u>See</u>, <u>e.g.</u>, <u>McCreary v. Diaz</u>, Case No. 18cv0789 2019 WL 6840410 at *10–22 (S.D. Cal. Dec. 16, 2019) (upholding a state court's ruling which recognized a right to counsel under <u>People v. Frye</u>, 959 P.2d 183, 240 (Cal. 1998)); <u>Jackett v. Santoro</u> Case No. 21cv1626-L (MSB), 2023 WL 3990060 at *10–22 (S.D. Cal. June 12, 2023) (finding that the California Court of Appeal had not unreasonably applied <u>Strickland</u> in evaluating an ineffective assistance of counsel claim which relied upon <u>People v. Mai</u>, 305 P.3d 1175, 1194 (Cal. 2013) for its definition of prejudice); <u>Sims v. Cisneros</u> Case No. 22-cv-0814-BLF, 2023 WL 2989046 at *21 (N.D. Cal. Apr. 17, 2023) (same); <u>Tucker v. Cate</u>, Case No. 10-CV-2272-BGS, 2011 WL 2559532 at *19–22 (S.D. Cal. June 24, 2011) (determining that a California Court of Appeal decision citing <u>People v. Lucas</u>, 333 P.3d 587, 703 (Cal. 2014) in articulating the appropriate standard for an ineffective assistance of counsel claim was "not contrary to or an unreasonable application of federal law."). The state-court decision explicitly relied upon the appropriate federal precedent in <u>Strickland</u> as well as precedents in California law which have been upheld as conforming to the standard set by federal precedent.  (See ECF No. 22-5 at 12–19.)  Thus, Petitioner would be unable to show that the decision was contrary to clearly established federal law.

Petitioner is also unable to demonstrate that the Court of Appeal unreasonably applied federal law in concluding that there was no reasonable chance the jury could find subjective provocation even had they received instruction on it.  As the California Court of Appeal explained, it interpreted provocation as having its ordinary meaning within the context of CALCRIM 522 and reasoned that no reasonable person would apply provocation to situations wherein a defendant makes a "preemptive strike" against a victim who was "unaware of the defendant's presence."  (ECF No. 22-5 at 19.)  This application is consistent with precedent denying habeas relief for a failure to instruct the jury using CALCRIM 522 as a result of inadequate evidence in the record of provocation. Avendano v. McDonald, Case No. CV 11-5405-GAF (RCF) 2012 WL 7656773 at *9 (C.D. Cal. Dec. 27, 2012) (finding no prejudice where the jury was not given CALCRIM 522 and Petitioner initiated contact with decedent).  Moreover, as numerous federal courts in the 9th Circuit have found, a conviction of first-degree murder itself is sufficient to demonstrate that failure to request instruction on provocation under CALCRIM 522 did not prejudice the jury because it demonstrates that a criminal defendant's actions demonstrate premeditation and deliberation.  See Rogers v. Lynch, Case No. 2:23-cv-0238 2024 WL 2723081 at *9 (E.D. Cal May 28, 2024) ("petitioner cannot show he was prejudiced by counsel's failure to request the instruction on provocation because the jury's first degree murder verdict demonstrates the jury found petitioner had the specific intent to kill and acted with the premeditation and deliberation required for first degree murder" (citing Landeros v. Biter, Case No. CV 13-00550-GW(SH) 2013 WL 6004187 at *10 (C.D. Cal. Nov. 7, 2013)); Castrellon v. Lynch, Case No. EDCV 20-1009-RGK (LAL) 2020 WL 6648993 at *7 (C.D. Cal. Sept. 11, 2020) ("trial counsel's failure to request the instruction did not prejudice Petitioner in light of the jury's finding . . . that Petitioner killed the victim with premeditation and deliberation."); Chavez v. Biter, Case No. EDCV 15-1104 DDP-KS 2016 WL 1714861 at *11 (C.D. Cal. Feb. 25 2016) (stating that a finding of first degree murder is sufficient to show a lack of provocation because it demonstrates a jury's factual finding of premeditation and deliberation). Thus, Petitioner

cannot show that the California Court of Appeal's decision unreasonably applied federal law in determining that he had failed to show prejudice arising from trial counsel's alleged errors.

Accordingly, Petitioner fails to establish that trial counsel's alleged deficient performance prejudiced Petitioner's defense when jury instruction was not given on provocation. See Strickland, 466 U.S. at 687. Consequently, to the extent Petitioner is alleging that his trial counsel was ineffective for failing to argue for CALCRIM 522, the Court **RECOMMENDS** that this claim be **DENIED**.

**B.    Error Claims**

Petitioner further raises separate claims of "Instructional Error," "Prejudicial Error," and "Cumulative Error based on accumulation of all errors combined" in his Traverse. (See ECF No. 27 at 4.) The Court is required to construe the claims of pro se habeas petitioners liberally. See Barron v. Ashcroft, 358 F.3d 674, 676 (9th Cir. 2004). The Court thus understands Petitioner to be asserting claims of instructional error and cumulative error in violation of his Eight Amendment right to Due Process. Petitioner did not raise these grounds in his Petition. (See ECF No 1 at 6.) "A Traverse is not the proper pleading to raise additional grounds for relief." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994); see also Collins v. Uribe, 564 F. App'x 343, 343–44 (9th Cir. 2014) (quoting Delgadillo v. Woodford, 527 F.3d 919, 930 n.4 (9th Cir. 2008)) ("Arguments raised for the first time in petitioner's reply brief are deemed waived."). "In order for the state to be properly advised of additional claims, they should be presented in an amended petition, or . . . in a statement of additional grounds." Cacoperdo, 37 F.3d at 507.

Additionally, Petitioner did not present his instructional error or cumulative error claims to the California courts, and the claims are therefore unexhausted. See 28 U.S.C. § 2254(b)(1)(A) ("An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.");

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (providing that exhaustion of a habeas petitioner's federal claims requires that they have been "fairly present[ed]" in each appropriate state court, including a state supreme court with powers of discretionary review).

Even if the Court were to consider these claims, they would still fail on the merits. Petitioner alleges "instructional error," stemming from the trial court omitting jury instruction on how adequate provocation may reduce murder from the first to the second degree.  (<u>See</u> ECF No. 27 at 4); <u>See also</u> CALCRIM No. 522 (discussing how adequate provocation can reduce murder from the first to the second degree). Petitioner argues this instruction was relevant and could have been used to raise a reasonable doubt as to whether he had formed the requisite intent to support his conviction.  (<u>See</u> ECF No. 27 at 4) ("the existence of provocation which is not adequate to reduce the class of offence [sic] may never the less raise a reasonable doubt that the defendant formed the intent to kill. . . .").

The Supreme Court has made a distinction between instructional errors which are structural (requiring automatic reversal) and those which are "trial errors subject to harmless-error review." <u>Hedgpeth v. Pulido</u> 555 U.S. 57, 60–61 (2008).  Structural errors "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'" <u>Neder v. United States</u>, 527 U.S. 1, 8–9 (1999) (citing <u>Rose v. Clark</u>, 478 U.S. 570, 577–78 (1986)).  Despite Petitioner's assertion that the identified instruction would have allowed the jury to conclude he did not have the requisite intent to be convicted of first degree murder, its inclusion would not be sufficient to have provided a complete defense from punishment.  <u>See</u> CALCRIM 522 (omitting any discussion of provocation as a complete defense).  Its omission may thus affect the degree of punishment imposed, but not from total insulation from punishment.  Petitioner's assertion thus meets the definition of a trial error, rather than a structural one.

Because Petitioner alleges instructional error meeting the definition of a "trial error," his claim is properly analyzed under a harmless error analysis. <u>Hedgpeth</u> 555 U.S. at 60–61. A harmless-error analysis requires the reviewing court to determine "what effect the constitutional error . . . had upon the guilty verdict in the case at hand." <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 279 (1993). Harmless error may be found only where "the court [is] able to declare a belief that [the alleged federal constitutional error] was harmless beyond a reasonable doubt." <u>Chapman</u>, 386 U.S. at 828.

Petitioner is unable to show that the omission of jury instruction on provocation had any impact on his conviction of first-degree murder because he cannot show such instruction would be relevant. As the California Court of Appeal explained, California law's definition of provocation requires some affirmative act "which . . . negates the possibility that the defendant planned the killing *in advance*." (ECF No. 22-5 at 16.) The U.S. Supreme Court has upheld similar definitions of provocation requiring an affirmative action as being consistent with the federal law. <u>See</u> <u>Allen v. United States</u>, 164 U.S. 492, 497 (1896) (upholding a definition of provocation requiring an affirmative action greater than mere words). The facts established at Petitioner's trial demonstrate that the decedent was looking at his phone, was unaware of Petitioner's presence, and took no such affirmative action on the morning of his death. (<u>See</u> ECF No. 22-5 at 17). Therefore, no provocation could have existed under its relevant, federally-permissible definition. In the absence of any provocation, instruction on the subject cannot have had an effect on a reasonable jury's verdict. Accordingly, any alleged instructional error must be treated as harmless.

Consequently, to the extent Petitioner is alleging instructional error for the omission of instruction on provocation as outlined in CALCRIM 522, the Court **RECOMMENDS** that this claim be **DENIED**. <u>See</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Petitioner further alleges "cumulative error," on the same grounds. (See ECF No. 27 at 4.) "Cumulative error occurs when 'although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors [has] still prejudice[d] a defendant.'" Wooten v. Kirkland, 540 F.3d 1019, 1022 n.1 (9th Cir. 2008) (citing Whelchel v. Washington, 232 F.3d 1197, 1212 (9th Cir. 2000)). An analysis of this claim is inappropriate, as Petitioner has alleged no additional sources of error that would support his due process claim. The Court would thus be unable to find cumulative error under the petition currently before it. For these reasons, the Court **RECOMMENDS** that this claim also be **DENIED**.

## C.    Due Process Violation Based on Petitioner's Exclusion from the Finalization of Jury Instructions

Petitioner argues the trial court deprived him of his due process rights under the Sixth Amendment as applied through the Fourteenth Amendment by improperly excluding him from a material stage of the trial when it finalized jury instructions outside of his presence. (ECF No. 1 at 7; ECF No. 27 at 6–9.) The California Supreme Court summarily denied Petitioner's state habeas petition asserting this claim without a written opinion.

Where, as here, a petitioner exhausts his state law remedies and no reasoned decision exists, "[a] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme] Court." Cullen, 563 U.S. at 188.

Petitioner alleges that the trial court violated his due process rights under the 6th and 14th Amendments when it met with counsel to finalize jury instructions outside of Petitioner's presence and over his objection. (ECF No. 1 at 7.) A criminal defendant has a due process right "to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987). This right to presence may be waived under certain

circumstances.  See Illinois v. Allen, 397 U.S. 337, 343 (1970) ("a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom."); see also Crosby v. United States, 506 U.S. 255, 261–62 (1993) (contrasting the ability of the government to continue criminal trials *in absentia* for criminal defendants who knowingly and voluntarily flee their trial after its commencement with its inability to commence a trial with an absent defendant, even when this defendant knowingly and voluntarily fled).  Defendant's right of presence does not extend to "a conference or argument upon a question of law." Fed. R. Crim. Pro. 42(b)(3).  This includes hearings concerning the selection of jury instructions.  See United States v. Sherman, 821 F.2d 1337, 1339 (9th Cir. 1987) ("[A] hearing outside the presence of the jury concerning the selection of jury instructions is a 'conference or argument upon a question of law.'")  Based on this, the Ninth Circuit has determined that "a district court's failure to require that [a defendant] be present during the in-chambers proceedings regarding the jury instructions [is] not error."  Id.

After conducting the above review, the Court finds that the California Supreme Court denied Petitioner's claim based on its determination that Petitioner had no legal right to be present for such a jury instructions conference under the Constitution of the United States.  This interpretation is consistent with settled Ninth Circuit caselaw and a similar rule has been adopted across multiple other circuits.  See, e.g., United States v. Thornton, 609 F.3d 373, 376 (6th Cir. 2010) ("[a]ll circuits that have directly addressed this issue hold that jury instruction conferences do fall within the Rule 43(b)(3) exception"); United States v. Rivera, 22 F.3d 430, 439 (2d Cir. 1994) ("a conference to discuss [the content of jury] instructions is . . . a conference on a question of law at which a defendant need not be present); United States v. Gregorio, 497 F.2d 1253, 1259 (4th Cir. 1974), overruled on other grounds by United States v. Rhodes, 32 F.3d 867, 873 (4th Cir. 1994) ("neither rationale behind the right of presence is applicable to a purely legal

conference on jury instructions"); <u>United States v. Graves</u>, 669 F.2d 964, 972 (5th Cir. 1982) ("[a] defendant does not have a federal constitutional or statutory right to attend a conference between the trial court and counsel concerned with the purely legal matter of determining what jury instructions the trial court will issue").  Given the plain text of Fed. R. Civ. Pro. 43(b)(3) and the precedent set by <u>Sherman</u>, the Court concludes that the state court's determination that there was no federal constitutional right to be present during the jury instruction conference was not in error.  821 F.3d at 1339.  Consequently, the Court **RECOMMENDS** that Petitioner's claim alleging a violation of his Sixth and Fourteenth Amendment rights for exclusion from a conference related to jury instructions be **DENIED**.

## V. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS ORDERED** that no later than **December 13, 2024**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 3, 2025**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**

Dated:  November 15, 2024

_____
Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge

21